Robin F. Wynne, Justice, concurring in part and dissenting in part. Iasi believe that appellees satisfied their burden at this stage with regard to their claim that the method of execution set forth in Act 1096 of 2015 substantively violates the Arkansas Constitution’s prohibition of cruel or unusual punishment. I further believe that portions of Act 1096 violate article 19, § 12 of the Arkansas Constitution. Accordingly, I concur in part and dissent in part. The majority’s conclusion that appellees failed to satisfy their burden at this stage regarding the second prong of the test announced in Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015), is mistaken. The majority concludes that appellees failed to present facts sufficient create a question of fact regarding whether the risk posed by the challenged method of execution is substantial when compared to known and available alternative methods of execution. Appel-lees have created a triable issue as to the second prong of the Glossip test. They have laid out several different alternatives that they contend carry a reduced risk of severe pain when compared to the challenged method of execution. They have further produced evidence that the methods are available and that they carry a reduced risk in comparison with the method contained in Act 1096. Appellants might be mistaken in their assertions, but that issue is not before us at this stage in the proceedings. I would remand the matter to the circuit court for further proceedings on appellees’ substantive challenge to the lethal-injection protocol laid out in Act 1096. The majority’s analysis of whether of the confidentiality requirements of Act 1096 violate article 19, § 12 of the Arkansas Constitution is likewise flawed. As the majority notes, we stated in Griffin v. Rhoton, 85 Ark. 89, 95, 107 S.W. 380, 382 (1907), that “[a] ^constitutional provision may be said to be self-executing if it supplies a sufficient rule, by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.” Under this test, article 19, § 12 is self-executing. Far from merely indicating principles, the provision clearly states exactly what information is to be given to the public. The only role given to the General Assembly is to decide how to make the information public. One thing that the General Assembly may not do is decide whether to make the information public. This is exactly what the nondisclosure provisions of the Act do, and the majority has erroneously chosen to legitimize that overreach of authority by the General Assembly. The majority further errs by holding that subsection (i)(3) of Act 1096, which allows the Arkansas Department of Correction to disclose the information after obtaining a protective order, brings the nondisclosure provisions within the legislature’s authority to determine the time and manner of disclosure. However, article 19, § 12 .expressly requires that the information be published. To publish something is to declare it publicly or make it generally known. Webster’s Third New International Dictionary 1837 (2002). Essentially, the majority is saying that a requirement for certain information to be publicly declared is satisfied if a state agency first gets an order prohibiting the information from being made public. That makes absolutely no sense whatsoever. Portions of Act 1096 clearly violate article 19, § 12 of the Arkansas Constitution. I would hold those subsections of the Act to be unconstitutional on that basis. For these reasons I concur in part and dissent in part.